UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JEANNETTE STEPP, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | NO. 7:09-cv-12-O |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on January 22, 2009. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On January 27, 2006, plaintiff Jeannette Stepp (hereinafter "Plaintiff" or "Stepp") filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of December 26, 2005, and claiming disability due to diabetes, bipolar disorder, herniated disc, and a thyroid problem. (Administrative Record (hereinafter "Tr." at 11, 91-95, 96-109, 124). Her claim was denied by the state agency initially and on reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on July 1, 2008, at which Plaintiff appeared with counsel and testified on her own behalf. (Tr. 23-54). The ALJ also received the testimony of vocational expert ("VE") Clifton A. King, Jr., and medical expert ("ME") Dr. Ollie D. Raulston, Jr., M.D.

*Id*. On September 4, 2008, the ALJ denied Plaintiff's request for benefits, finding, based on the testimony of the VE, that she had transferable work skills from past relevant work and was capable of making a successful adjustment to other work existing in significant numbers in the national economy. (Tr. 21). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on December 23, 2008, the Appeals Council denied her request. (Tr. 1-3). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed her federal complaint on January 22, 2009. Defendant filed an answer on April 9, 2009. On June 25, 2009, Plaintiff filed her brief. Defendant filed his brief on September 9, 2009, followed by Plaintiff's reply on September 16, 2009.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations omitted). When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion:   To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step four. He noted that Stepp was 51 years old, that she had at least a high school education and the ability to communicate in English, and had past relevant work as a security guard, phlebotomist, nurse aide, fast food manager, and lab assistant. (Tr. 20). He found that Plaintiff suffered from the severe impairments of herniated

3

disc, status post fusion at L5-S1, dysthymia, diabetes, and hypertension, but that this combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). He found that Stepp could perform her past relevant work as a lab assistant, a phlebotomist, and a fast food worker, based on the testimony of the vocational expert and considering her age, education, work experience, and a residual functional capacity ("RFC") for a limited range of light work. (Tr. 15, 20-21). Additionally, he found that Stepp had acquired work skills from past relevant work that were transferrable to other occupations which existed in significant numbers in the national economy, including the representative occupations of blood bank clerk, appointment clerk, and timekeeper. (Tr. 21). The ALJ therefore concluded that Stepp was not under a disability and denied her claim for benefits. (Tr. 21-22).

Plaintiff argues that neither the ALJ nor the Appeals Council gave proper weight to the opinion of her treating physician Dr. Sanjoy Sundaresan, M.D.; that the ALJ's RFC finding regarding Plaintiff's manual limitation is not supported by substantial evidence as shown by objective medical evidence submitted to the Appeals Council; and that the absence of any mental limitations in the RFC finding is unsupported. For the reasons discussed below, the court finds that the ALJ's decision is supported by substantial evidence in the record and that the proper legal standards were applied in evaluating the evidence.

Medical History: On December 30, 2005, Stepp was seen by Dr. John Westkaemper, M.D., for pain in her right ankle resulting from falling down some stairs four days earlier. (Tr. 180-81). She was having difficulties with activities of daily living and did not believe she could work. *Id*. Dr. Westkaemper determined that she would be unable to work for several weeks and

4

prescribed Hydrocodone.  *Id*.   On February 24, 2006, Stepp was seen by Dr. Douglas Won, M.D.  She complained of back pain stemming from her December 26, 2005 fall.  (Tr. 182-83). Physical examination revealed tenderness to palpation over the lumbar spine, but otherwise normal results.  *Id*.  On March 27, 2006, Dr. Sundaresan physically examined Stepp, noting pain in extension and motion of thoracic and lumbar spines.  His treatment notes state "I do believe Ms. Stepp should remain off work since her pain is truly debilitating.  Performing her type of work in my opinion may be deleterious to her spine and to her level of pain."  (Tr. 235).

Stepp returned to Dr. Sundaresan with regularity from March through October 2006.  (Tr. 224, 227, 233, 235, 283-285, 288). The treatment notes signed by his physician assistant (P.A.) Jimmy Whetsell during this period describe Stepp's ongoing complaints of lower back pain with bilateral lower extremity pain and upper back pain radiating around her right side, abdomen, and ribs.  *Id*.  The physical examinations indicate she was ambulating without assistance and had a decreased range of motion of the lumbar spine due to pain.[1]  *Id*.  Throughout the period of March through October, the treatment notes consistently detail Stepp's complaints of severe to unbearable pain and the doctor's physical examination findings that she was "grossly, neurologically intact", "ambulating without assistance", and had "decreased range of motion of the lumbar spine due to pain".  *Id*.

---

[1] From March through May, she was having "decent", "good", or "mild", although temporary, relief of low back pain through use of injection treatments.  (Tr. 224, 227, 233).  In August, treatment notes indicate that her "pain is severe enough to limit her ability to perform even simple activities of daily living."  (Tr. 288).  On October 2nd, the notes indicate she "continues to have difficulty performing even simple activities of daily living."  (Tr. 285).  On October 23, Stepp described her pain as "unbearable".  (Tr. 284).  On October 31, she again complained of "unbearable" back pain, and Dr. Sundaresan discussed L5-S1 Transforaminal Lumbar Interbody Fusion (TLIF) with pedicle screw instrumentation and use of bone morphogenic protein as an option.  (Tr. 283).

On November 20, 2006, Stepp underwent L5-S1 Transforaminal Lumbar Interbody Fusion (TLIF) with pedicle screw instrumentation and use of bone morphogenic protein.[2] (Tr. 246). Following her surgery in November 2006, Stepp ambulated with the assistance of a rolling walker at least through December and was ambulating without assistance by March 9, 2007. (Tr. 246, 272-75, 268-69). She continued to suffer from a decreased range of motion due to pain around the lumbar spine throughout the period of December 2006 through October 2007.[3] *Id*. Her treatments and complaints in May 2008 were not significantly different from those in December 2005. (Tr. 294-95). She still complained of severe back pain. *Id*. Her treatment regimen remained similar as well; consisting of "fluoroscopically-guided injections in conjunction with her narcotic analgesics". *Id*. Dr. Sundaresan noted that "she seems to do fairly well with this treatment plan" and that "[s]he does feel it improves her quality of life and makes the pain fairly tolerable." *Id*.

---

[2] Transforaminal Lumbar Interbody Fusion (TLIF) involves removing an intervertebral disc and replacing it with a bone graft spacer in the middle of the interbody space. *See* Posterior Lumbar Interbody Fusion (PLIF) & Transforaminal Lumbar Interbody Fusion (TLIF), http://www.uscspine.com/treatment/lumbar-interbody-fusion.cfm?print=yes. (Last accessed September 28, 2009).

[3] On December 12, 2006, Stepp was ambulating with the assistance of a rolling walker, had "decreased range of motion about the lumbar spine due to pain", and had tenderness and mild edema at the site of the incision. (Tr. 275). On March 9, 2007, her wound was well healed, she was ambulating without assistance, and continued to have a "decreased range of motion about the lumbar spine due to pain." (Tr. 274). On April 24, 2007, Stepp had "decreased range of motion about the lumbar spine due to pain as well as an antalgic gait and difficulty when transferring from a seated to standing position" as well as "some moderate edema in both lower extremities". She was doing well at managing her pain with Hydrocodone. (Tr. 272-273). On June 11, 2007, Stepp had recently tried physical therapy, which she discontinued on her own due to increased pain, and she continued "to complain of episodes of moderate to severe upper back pain which radiates into the lower back as well as into both lower extremities." (Tr. 269). On October 9, 2007, notes indicate she had "been doing fairly well over the last several months, noticing some significant improvements in her pain control as well as in her ability to sleep." (Tr. 268).

Analysis:

**First**, Stepp argues that neither the ALJ nor the Appeals Council gave proper weight to the opinion of her treating physician, Dr. Sundaresan. The ALJ stated she gave "little weight to the opinions and findings of Dr. Sundaresan where they are not supported by the signs, symptoms, and medical findings in the record." (Tr. 20). Specifically, the ALJ was referring to a RFC Questionnaire completed by Dr. Sundaresan on July 24, 2008. (Tr. 19-20, 300-01). A second RFC Questionnaire was completed by Dr. Sundaresan on August 25, 2008; however, the August questionnaire was submitted directly to the Appeals Council, which determined "this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2, 312-313). The doctor completed both questionnaires after the July 1, 2008 administrative hearing. Both consist of two-page checklist-style forms sent to him by Ms. Stepp's counsel.[4]

On the July 24, 2008 questionnaire, Dr. Sundaresan checked blocks indicating that Stepp had not been capable of performing sustained LIGHT work on a regular basis and that she would likely be absent from the work site at least three to four days per month. (Tr. 300-301). In explanation, he stated "Jeanette is status post L5-S. Transforaminal lumbar interbody fusion and

---

[4] There are four questions on the forms:
1) Asks for the Doctor's areas of medical specialty. "Neuorosurgery" is listed on the July form; the August form leaves a blank.
2) Defines "light work" and "Frequent (July form) and "sedentary" and "occasionally" (August form). It then asks for a yes-or-no checkmark response, with "no" listed first, to the statement "Ms. Stepp [has / has not] been capable of performing sustained [LIGHT (July) / SEDENTARY (August)] work on a regular and continuing basis, i.e. 8 hours per day, 5 days per week, or an equivalent work schedule."
3) Assumes a "yes" answer to number 2, requesting a yes-or-no checkmark response to the question "it [is / is not] likely that Ms. Stepp would be sick and required to be absent from the work site at least three to four days per month."
4) Asks for a brief statement of medical findings upon which affirmative answers to numbers 2 and 3 are based.

7

has retained pedicle screw instrumentation. She continues to suffer from moderate to severe upper / lower back pain which is exacerbated by increased activity (i.e. bending, squatting, stooping, lifting, carrying objects; and also with sitting / standing / working for extended periods. She has multiple MRI / CT scans showing displaced thoracic discs and posterior degenerative changes throughout her spine. She may indeed be capable of returning to light work but very doubtful that she could sustain this type of activity. It is highly likely she would be out of work due to pain more than 4-5 days per month if not more." (Tr. 301).

As noted above, the ALJ, in reviewing the doctor's July 2008 RFC assessment stated that she "gives little weight to the opinions and findings of Dr. Sundaresan where they are not supported by the signs, symptoms and medical findings in the record." (Tr. 20). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). In discussing her findings, the ALJ related "for example, on examination, the claimant has full strength of her extremities and there is no evidence of atrophy. She has full range of motion of all peripheral joints. She is neurologically stable and her gait is normal and unassisted. She has decreased range of motion of the lumbar spine secondary to pain, but not to the extent that would support Dr. Sundaresan's opinion. This opinion relating to the claimant's ability to sustain light work is not a medical source statement, but instead is a conclusory allegation of disability." (Tr. 19-20). As set out above, the majority of treatment records from March 2006 through May 2008 indicate that Stepp suffered from ongoing back pain and that her pain was being successfully managed with medication. (*Supra*, P. 5-6).

"The determination that a claimant is unable to work is a legal conclusion reserved

exclusively to the Commissioner." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1).  In reaching her findings, the ALJ considered the Plaintiff's objective medical evidence, Plaintiff's subjective testimony, the testimony of the medical expert and of the vocational expert, and Plaintiff's age, education, and work experience.  Her decision to accord less weight to the July 2008 RFC assessment of Dr. Sundaresan is supported by substantial evidence.

After Plaintiff sought review of the ALJ's unfavorable decision by the Appeals Council, her attorney submitted Dr. Sundaresan's second RFC in which the doctor checked blocks indicating that Stepp had not been capable of performing sustained SEDENTARY work on a regular basis and that it is likely that she would be absent from the work site at least four days per month.  He noted "MRI findings of moderate to severe degenerative disc disease and spondylosis.  On exam she has difficulty with range of motion, sitting for extended periods, and transferring." (Tr. 312-313).[5]

The opinions expressed in Dr. Sundaresan's August 2008 RFC are equally conclusory and are contradicted by other findings in the medical record.  Succinctly stated, the report submitted to the Appeals Council adds nothing material to Plaintiff's disability claim casting doubt on the weight which the ALJ gave to the doctor's findings and opinions.  "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the [Commissioner's] determination'." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994), citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).  Therefore, there was substantial evidence to support the Appeals Council's rejection of Stepp's request to reverse the ALJ's

---

[5] The MRIs are a part of the administrative record and are expressly referred to in the ALJ's decision. *See* Tr. 16 and 17.

decision.

**Second**, Stepp argues that the ALJ's RFC finding regarding Stepp's manual limitation is not supported by substantial evidence, as shown by objective medical evidence submitted to the Appeals Council.  On March 28, 2006, Stepp stated that she could use her hands at her waistline for less than 10 minutes before experiencing pain, and that she was limited in using the telephone because her "hands go numb" if she holds the receiver longer than 10 minutes.  (Tr. 146).  During the hearing on July 1, 2008, when asked by her attorney whether she has problems using her hands, Stepp replied that she occasionally does; that she drops things when she is picking them up, that her wrists start to hurt if she types for very long, and that her fingers go numb if she holds the phone for more than two minutes.  (Tr. 38).

Aside from Plaintiff's self-described difficulties in using her hands, there is nothing in the medical record which was before the ALJ to show the presence of a disabling condition with respect to her hands and wrists.[6]  In her request for review of the ALJ's decision she submitted an electromyelogram ("EMG") study performed on her upper extremities by Dr. R. Brandon Neiman, M.D., on September 4, 2008.  (Tr. 315).  Although the report contains the observation that Plaintiff was suffering from bilateral median neuropathy in both wrists, there is no indication as to when this condition first became manifest or the severity of the condition as it might otherwise relate to her ability to perform the functions of the occupations in which the ALJ found that Stepp could engage.  Therefore this additional evidence neither establishes an absence of substantial evidence to support the ALJ's decision nor constitutes "material new evidence".

---

[6] Although the ALJ found that Stepp's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the judge found that Plaintiff's claimed intensity, persistence, and limiting effects of the symptoms were not credible.  (Tr. 16).

**Third**, Stepp claims that because the ALJ's RFC does not include a mental impairment component a remand is required. She notes that the ALJ found her dysthymia to be a "severe" mental impairment and found her to have "moderate difficulties" in the broad areas of social functioning and concentration, persistence, or pace; but that the ALJ did not include any mental limitations in the RFC. Although she correctly observes that the RFC does not include any restriction due to mental impairment(s) (Tr. 15 at ¶ 5), the ALJ's decision explicitly addresses the effect of Plaintiff's dysthymia. She sets out the findings of the consultative examining psychologist, the criteria necessary to satisfy an impairment equal to that under listing 12.04 "paragraph B", followed by her findings with respect to the several factors, e.g. restrictions on Plaintiff's daily living activities. (Tr. 14, at the fourth through eighth paragraphs). The ALJ further made specific findings regarding Plaintiff's reported daily activities and quantified the severity of her limitations. In rating the severity of Plaintiff's mental impairments the ALJ stated her reliance on the report of the consultative examining psychologist, and described Plaintiff's self-reported daily activities (Tr. 18 at the second and third paragraphs) as well as the state agency psychologist's assessment, to which she gave great weight. (Tr. 19 at first paragraph).

Although the ALJ's RFC (Tr. 15 at ¶ 5) contains no mental limitations, her decision clearly reflects that she considered Stepp's mental limitations in formulating the RFC. (Tr. 15). She properly exercised her responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into her RFC assessment that were supported by the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Therefore, the ALJ's RFC determination is supported by substantial evidence in the record.

11

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and judgment DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 14th day of October, 2009.

/s/ Wm. F. Sanderson, Jr.
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.